UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RAY K. HAYNES Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-01717-LJM-DKL |
| | ) | |
| INDIANA UNIVERSITY, | ) | |
| THE BOARD OF TRUSTEES OF | ) | |
| INDIANA UNIVERSITY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER ON MOTION FOR SANCTIONS &
## PENDING DISCOVERY MOTIONS

This matter is before the Court on seven (7) separate motions filed by the parties.

Plaintiff Ray Haynes, Ph.D., has filed a Motion for Sanctions (dkt. 70), a Motion to Compel

(dkt. 107), and a Motion for Rule 56(d) Relief (dkt. 109).  Defendants Indiana University,

the Board of Trustees of Indiana University, Joyce Alexander, Thomas Brush, Gary Crow,

Thomas Gieryn, Gerardo Gonzalez, Terrence Mason, Michael McRobbie, Eliza Pvalko,

and Laruen Robel (collectively "Defendants"), have filed a Motion for Leave to Submit

Documents for *In Camera* Review (dkt. 75), a Motion for Entry of Protective Order (dkt.

78), a Motion for Leave to File Surreply In Opposition to Plaintiff's Motion for Sanctions

(dkt. 79), and a Motion to Strike Response in Opposition to Motion (dkt. 84).  The Court

addresses each motion in turn.

# I. <u>PROCEDURAL HISTORY</u>

On March 27, 2017, Defendants filed their Motion for Summary Judgment, which has been fully briefed by the parties. Dkt. 66.

On March 28, 2017, Dr. Haynes filed his Motion for Sanctions Against Defendants for Unilaterally Depriving Dr. Ray Haynes of his Right to Cross-Examination; and for Taking 385 Days to Produce Material Documents ("Motion for Sanctions"). Dkt. 70.

On April 10, 2017, Defendants filed a Motion for Leave to Submit Documents for *In Camera* Review ("Motion for *In Camera* Review"). Dkt. 75.

On April 13, 2017, Defendants filed a Motion for Protective Order that seeks protection for the votes cast by Indiana University faculty regarding Dr. Haynes' tenure application. Dkt. 78.

Also on April 13, 2017, Defendants filed a Motion for Leave to File Surreply in Opposition to Plaintiff's Motion for Sanctions ("Motion for Surreply"). Dkt. 79.

On April 25, 2017, Defendants submitted a Motion to Strike Dr. Haynes' Response in Opposition to the Motion for *In Camera* Review ("Motion to Strike"). Dkt. 84.

On May 13, 2017, Dr. Haynes filed a Motion to Compel, which seeks to correct alleged deficiencies in Defendants' discovery responses. Dkt. 107.

Also on May 13, 2017, Dr. Haynes filed a Motion for Rule 56(d) Relief, which requests additional time to respond to Defendants' Motion for Summary Judgment in light of the documents that Dr. Haynes alleges have not been properly produced. Dkt. 109.

## II. <u>MOTION FOR SANCTIONS</u>

Dr. Haynes' Motion for Sanctions seeks relief for two violations allegedly committed by the Defendants: (1) Defendants' termination of Dr. Haynes' January 27,

2017, deposition in violation of Federal Rule of Civil Procedure 30(d) ("Rule 30(d)"); and (2) Defendants' delay of 385 days in providing their privilege log and their failure for 315 days to produce non-privileged documents.

## A. DR. HAYNES' DEPOSITION

Dr. Haynes claims that Defendants "unilaterally" terminated his deposition. Dr. Haynes' and Defendants' counsel disagreed as to the continuation of the deposition for another date. More specifically, Dr. Haynes wanted to perform his cross-examination the same evening that Dr. Haynes was deposed, but Defendants' counsel refused.

### 1. <u>Deposition</u>

Dr. Haynes' deposition began on January 27, 2017, at 9:40 a.m. Dkt. 70-1 at 3. At one point, Defendants' counsel called Magistrate Judge LaRue ("MJ LaRue") to discuss whether Dr. Haynes' counsel engaged in coaching his witness and address the manner in which he objected to questions. Dkt. 70-1 at 32-35. During this phone call, Dr. Haynes' counsel agreed to waive all objections save those relating to attorney-client privilege. Dkt. 70-1 at 35. At approximately 6:00 p.m., counsel disputed the amount of time that it would take Dr. Haynes' counsel to cross-examine Dr. Haynes, because Dr. Haynes' counsel stated that he would need four to five hours. Dkt. 70-1 at 56. Defendants' counsel indicated that the deposition would not conclude until midnight if this occurred. Dkt. 70-1 at 56. Dr. Haynes' counsel responded that he would object to the cessation of the deposition, but that he was "willing to discuss another time" to resume it. Dkt. 70-1 at 56. Both counsel then discussed availability and settled on resuming the cross-examination of Dr. Haynes on February 9th at 3:30 p.m., because Dr. Haynes had to teach during morning hours. Dkt. 70-1 at 56-57. At the end of this discussion,

Defendants' counsel confirmed that he could move some other events to make that time work, to which Dr. Haynes' counsel responded, "I'll talk to [Dr. Haynes] and see if he wants to do that, but for now, let's proceed with the rest of his deposition." Dkt. 70-1 at 57.

Defendants' counsel then resumed the questioning until, in the middle of a question by Defendants' counsel, Dr. Haynes' counsel stated that he had a court reporter in his office "if you're going to deny us to do any redirect, and I will try to keep it to only an hour to do the redirect." Dkt. 70-1 at 63. Dr. Haynes' counsel continued, "I've called a court reporter to get a court reporter over here, and we need to talk about it now, because that's my plan. If you're denying us to do a redirect of even an hour, I think that's denial of our ability to do a redirect." Dkt. 70-1 at 63. The parties then went off the record. Dkt. 70-1 at 63.

At 7:11 p.m., Dr. Haynes' counsel stated that he and Defendants' counsel had a discussion of a "hard stop" of one hour for redirect, but that he was objecting to it. Dkt. 70-1 at 63-64. Defendants' counsel reiterated that Dr. Haynes' counsel claimed that the redirect would take four to five hours and that Dr. Haynes' counsel could not guarantee that he would abide by the one hour hard stop. Dkt. 70-1 at 64. Dr. Haynes' counsel responded that he would stick to the hard stop of one hour, but noted that he did so under objection. Dkt. 70-1 at 64. Defendants' counsel agreed to the one hour hard stop time. Dkt. 70-1 at 64.

At 8:02 p.m., following a discussion off the record, both counsel recommenced the argument relating to the one-hour hard stop because Defendants' counsel's had refused to consent to a hard stop of one hour on his redirect. Dkt. 70-1 at 68-69. Defendants'

counsel stated that he was concluding the deposition after his final questions, but was going to keep the deposition open so that Dr. Haynes' counsel could perform his cross-examination and to address issues relating to Dr. Haynes' counsel's behavior during the deposition. Dkt. 70-1 at 68-69.

After more argument between counsel, Dr. Haynes and his counsel left the room and Defendants' counsel recited a summary of what occurred on the record. Dkt. 70-1 at 71-74. The deposition concluded at 8:28 p.m. Dkt. 70-1 at 74.

### 2. Parties' Communications

Approximately two hours after the conclusion of Dr. Haynes' deposition, Defendants' counsel received an email from Dr. Haynes' counsel[1] summarizing what happened during the deposition and requesting that Defendants' counsel contact Dr. Haynes' counsel to discuss the matter without the need for Court intervention – despite copying the Court on the email. Dkt. 71-1. The following day, Saturday, Dr. Haynes' counsel again emailed the Court to outline the allegedly improper conduct of Defendants' counsel and to request an in-person conference. Dkt. 71-2 at 1-3. That Monday, both counsel discussed the matter and resolved to continue Dr. Haynes' deposition to a later date. Dkt. 71-3 at 1-2. Dr. Haynes' counsel emailed the Court and stated that they had "resolved all outstanding issues relating to plaintiff's deposition" and that as a result, would not "need court intervention at this time." Dkt 71-4.

---

[1] Following the deposition, Haynes' counsel's law partner, who did not attend the deposition, began to email on his behalf. For the purposes of the Motion for Sanctions, the Court will refer to all communication undertaken by Haynes' counsel's firm as "Haynes' counsel."

On February 23, 2017, approximately one month after Dr. Haynes' deposition and after Defendants objected to Dr. Haynes' request to extend the discovery deadlines, Dr. Haynes' counsel emailed Defendants' counsel to seek dates to reconvene for Dr. Haynes' deposition. Dkt. 71-5 at 2-3. Defendants' counsel supplied three dates, of which Dr. Haynes' counsel chose March 14. Dkt. 71-3 at 2-3.

On March 1, MJ LaRue entered an Order denying Dr. Haynes' request to extend the discovery deadline. Dkt. 57. MJ LaRue noted that the Court had already afforded Dr. Haynes over six (6) months of additional discovery time, but that he waited until thirteen (13) days before the deadline's expiration to seek a fourth extension. Dkt. 57 at 2. MJ LaRue also noted that Dr. Haynes was "not diligent" in his pursuit of discovery and that at "no earlier point did [Dr. Haynes] present a motion to compel or otherwise seek intervention of the Court to address his litany of deficiencies and scheduling issues." Dkt. 57 at 7. MJ LaRue concluded by stating that "this ruling does not foreclose [Dr. Haynes'] opportunity to *promptly* present, by motion, any issue related to the resumption of Defendants' deposition of [Dr. Haynes]." Dkt. 57 at 8.

On March 13, Dr. Haynes' counsel emailed to cancel the continuation of the deposition because Dr. Haynes was ill. Dkt. 71-8 at 4-5. Defendants' counsel responded that he had no objection to cancelling and indicated that he had no further need to depose Dr. Haynes unless Dr. Haynes' counsel needed to cross-examine his client. Dkt. 71-8 at 4. After Dr. Haynes' counsel indicated that he wished to reschedule, Defendants' counsel stated that March 21, and 22, were his available dates. Dkt. 71-8 at 3. Defendants' counsel wrote that "[b]ecause the dispositive motion deadline is March 28, 2017, we need to complete Dr. Haynes's deposition by no later than March 23, 2017." Dkt. 71-8 at 1.

Dr. Haynes' counsel did not respond until over a week later on March 24, at which time he provided April 7, 10, and 11, as proposed dates for the resumption of the deposition, all of which were past the dispositive motion deadline. Dkt. 71-9.

On March 17, 2017, Dr. Haynes' counsel filed a Motion for Reconsideration of MJ LaRue's March 1 Order denying an extension of time. Dkt. 61. In the motion, Dr. Haynes counsel cited personal issues to excuse his delays in timely participating in discovery. Dkt. 61. On April 4, 2017, MJ LaRue extended the deadline for liability and non-expert discovery to May 1, 2017. Dkt. 72. In an April 7 Minute Entry MJ LaRue clarified that the Order on the Motion for Reconsideration "was intended only to grant what [Dr. Haynes] requested in his Motion: an enlargement of the discovery deadline to allow him to conduct three days of depositions of six individuals." Dkt. 74. MJ LaRue continued, "The Court declined to address Plaintiff's counsel's arguments regarding Defendants' asserted deficient document production and privilege log, and the resumption of Defendants' deposition of Dr. Haynes, because Plaintiff's pending and not-fully-briefed motion for sanctions is directed to these matters." Dkt. 74.

### 3. Analysis

Dr. Haynes claims that Defendants' counsel's actions violated Rule 30(d), which sets forth the duration, sanction, and manner to terminate a deposition. Rule 30(d)(2) states that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Dr. Haynes argues that Defendants' counsel's "unilateral" conclusion of the deposition, prior to the agreed upon eight (8) hours, is in violation of Rule 30. He also claims that Defendants' counsels refusal to allow

Dr. Haynes' counsel to cross examine Dr. Haynes on the same day of the direct examination was a violation of his due process rights, but does not cite any authority for this proposition.

Dr. Haynes has not, however, shown that Defendants' counsel impeded, delayed, or frustrated the fair examination of the deponent. The circumstances indicate that Defendants' counsel's decision to terminate the deposition at approximately 8:00 p.m., on a Friday evening, nearly 10.5 hours after it began, was not unreasonable. Both counsel had agreed to reschedule the cross-examination and redirect of Dr. Haynes for a different time, but for some unknown reason this no longer worked for Dr. Haynes or his counsel. Moreover, it was Dr. Haynes' counsel's behavior, not Defendants' counsel, that frustrated the deposition, so much so that MJ LaRue had to intervene. Additionally, the parties appear to have had an agreement and indicated to the Court that the matter had been resolved without the need for Court intervention. Finally, and most importantly, the relief sought by Dr. Haynes through his Motion for Sanctions deals with discovery issues that should have been dealt with far in advance of the dispositive motion and discovery deadlines. Only after Dr. Haynes missed yet another deadline did he file this Motion for Sanctions, despite MJ LaRue's admonition on March 1, that Dr. Haynes could "*promptly*" file a motion to resolve any issue relating to resuming Dr. Haynes' deposition, which he chose not to do. Dkt. 57 at 8. Accordingly, Dr. Haynes' own dilatory behavior is to blame for his current predicament.

## B. PRIVILEGE LOG

Dr. Haynes also seeks sanctions for Defendants' alleged delay of 385 days in providing their privilege log and their failure for 315 days to produce non-privileged

documents. Dr. Haynes claims that the privilege log, which was provided on March 3, 2017, contains documents that have no basis for a privilege to be exerted. Dr. Haynes believes this delay constitutes "an evasive or incomplete disclosure, answer, or response." Dkt. 77 (citing Rule 37(a)(4)). Dr. Haynes requests that the Court find that Defendants have waived their right to privilege for all the documents listed on the log due to the delay.

Defendants respond that they timely answered Dr. Haynes' first request for production on April 11, 2016, and included objections based upon the attorney-client privilege as well as work product doctrine. Defendants also note that Dr. Haynes did not send any discovery deficiency letter or notify Defendants of any discovery deficiency until February 23, 2017, which was twelve (12) days before the discovery deadline. The letter requested that Defendants produce a log by March 3, 2017, for all documents withheld or redacted on the basis of privilege, which they timely provided.

Defendants' delay in this matter, if any, is directly attributable to Hayne's own failure to put Defendants on notice about any alleged deficiency at the time it was discovered. Dr. Haynes waited until twelve (12) days before the discovery deadline before bringing the matter to Defendants' attention, to which Defendants timely responded. Dr. Haynes' perceived concern would have been better served had he put Defendants on notice earlier and then sought Court intervention if Defendants failed to adequately respond. Rule 37(a)(1) provides that a party may move the Court to compel disclosure or discovery, but must first certify that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Setting aside Dr. Haynes' failure to file a good faith

certification with his Motion for Sanctions, Dr. Haynes does not set forth any facts that demonstrate Defendants are withholding anything from him absent the documents on the privilege log, which will be addressed in Defendants' Motion for *In Camera* Review (dkt. 75).[2] *See supra*, pt. V.  Dr. Haynes simply complains about the timing of Defendants' disclosure of the privilege log, but once again it is his own fault for failing to diligently pursue the discovery in this matter.

### C.  CONCLUSION

Dr. Haynes has failed to set forth any basis for sanctions against Defendants under Rule 37.  For the reasons set forth above, Dr. Haynes' Motion for Sanctions is **DENIED**.

### III.  <u>MOTION FOR LEAVE TO FILE SURREPLY</u>

Defendants have filed a Motion for Leave to File Surreply in Opposition to Plaintiff's Motion for Sanctions ("Motion for Leave to File Surreply") (dkt. 79) alleging that Dr. Haynes raises new legal arguments and inaccurately describes an agreement between the parties.  Because Hayne's Motion for Sanctions has been denied, Dr. Haynes' Motion for Leave to File Surreply is moot and therefore **DENIED**.

### IV.  <u>MOTION TO STRIKE</u>

Defendants move to strike Dr. Haynes' response to their Motion for *In Camera* Review (dkt. 82) because Dr. Haynes submitted his response one day late.  Dkt. 84. Defendants also claim that Dr. Haynes' response exceeds the scope of the *in camera*

---

[2] Haynes complains that Defendants' Motion for *In Camera* Review is "insufficient to resolve Defendant's [sic] deficiencies in their privilege log, because Dr. Haynes still has no way of knowing whether all documents with redactions and all documents that were withheld are included on Defendants' privilege log."  Dkt. 77 at 12.  Haynes does not cite to any evidence that Defendants have not produced all of the documents for which they claim privilege and the Court will not engage in this type of conjecture.

review of documents by referencing an irrelevant "supplemental production of documents" that is yet to be addressed by Defendants. Dkt. 84 at 2. In his response to the Motion to Strike, Dr. Haynes indicates that the oversight was due to technical difficulties and states that the response was submitted at 12:03 a.m., on April 25, 2017, only three (3) minutes past the due date.

Motions to strike are typically disfavored because they often serve merely to delay proceedings. *See Heller Fin. Inc. v. Midwhey Poweder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). "[M]ere redundancy or immateriality" is not sufficient for a court to strike a pleading or parts thereof and a showing of prejudice to the moving party is required. *Hardin v. Am. Elec. Power*, 188 F.R.D. 509, 511 (S.D. Ind. 1999). Prejudice occurs when the challenged pleading or allegation is so complex and lengthy or so confuses the issues as to create an undue burden on the responding party. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F Supp. 2d 1006, 1009 (N.D. Ill. 1998).

Defendants have failed to demonstrate how Dr. Haynes' three (3) minute delay prejudiced them. Moreover, Defendants' complaint with respect to the irrelevant documents is immaterial to the Court's *in camera* review. Accordingly, Defendants' Motion to Strike is **DENIED**.

## V. <u>MOTION FOR *IN CAMERA* REVIEW</u>

Defendants' privilege log lists sixteen documents that they have withheld from production on grounds of both attorney-client privilege and the work-product doctrine. Dkt. 61-4. They contend that, during a meet and confer session, the parties agreed that Defendants would submit the five specifically disputed documents for *in camera* inspection and that is what Defendants have done in the present motion. (Only four

documents are submitted because Defendants discovered that the twelfth logged document already had been produced to Dr. Haynes. *See* dkt. 75 at 2 n.1.) Defendants have provided additional descriptions for the five specific documents that have been submitted for *in camera* review.

Dr. Haynes objects that the log's descriptors are insufficient to allow him to evaluate the merits of Defendants' asserted protections. Dkt. 82 at 4-7. Even as they are, however, he contends that the descriptions prove that five of the documents cannot qualify for attorney-client or work-product protection. Dkt. 82 at 4-7. He also argues that it is unknown whether Defendants have logged all documents they withheld and whether the log contains only documents withheld in their entireties or also contains documents that were produced but with redactions. Dr. Haynes denies any agreement that was limited to the five documents; he states that Defendants agreed to produce all withheld and redacted documents. Dkt. 82 at 6. Dr. Haynes requests that the Court order Defendants to log all redacted documents, to enhance the descriptions of each logged document, and to submit all allegedly privileged documents for *in camera* inspection. Dr. Haynes also questions the format of the documents produced and whether all responsive documents were produced by the Defendants. Dkt. 82 at 7-9.

Although Dr. Haynes complains about the quantity of documents the parties agreed to submit for *in camera* review, he provides no evidence to suggest that the actual agreement reached by the parties was other than what Defendants submitted. Therefore, the Court will limit its review to the documents attached to Defendants' motion and addresses each in turn.

## A. STANDARD OF REVIEW

The work product doctrine was designed "to protect the work of an attorney from encroachment by opposing counsel." *BASF Aktiengesellschaft v. Reilly Indust., Inc.*, 224 F.R.D. 438, 441 (S.D. Ind. 2004) (internal quotations omitted). Under the work product doctrine, a party may protect "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [that] party or its representative (including [that] party's attorney, consultant, surety, indemnitor, insurer, or agent)" from discovery by another party. Fed. R. Civ. P. 26(b)(3)(A). To assert a claim under the work product doctrine, a party must demonstrate that the document to be protected was created or obtained primarily "because of the prospect of litigation," and was not merely developed in the ordinary course of business. *Binks Mfg. Co. v. Nat. Presto Indust., Inc.*, 709 F.2d 1109, 1118-20 (7th Cir. 1983) (internal citations and quotations omitted) (finding that "the remote prospect of litigation" was not sufficient to apply the work product doctrine since the specified document was not prepared "because of" the prospect of litigation or because an articulable claim that was likely to lead to litigation existed).

In contrast, "[t]he attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity for the purpose of obtaining legal advice." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citation omitted). Such privilege is intended "'to encourage full disclosure and to facilitate open communication between attorneys and their clients.'" *BASF*, 224 F.R.D. at 442-43 (quoting *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003)). Although the attorney-client privilege "should be strictly confined within the narrowest possible limits," *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983), Indiana law allows

the privilege to extend to all communications between either a client, or the client's agent, and the client's attorney, or the attorney's agent. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 460 F. Supp. 2d 915, 919 (S.D. Ind. 2006) ("Indiana deems communications between clients and agents of the client's attorney and communications between the client's and attorney's agents privileged"); *see also, Volkswagen Aktiengesellschaft v. Novelty, Inc.*, 247 F. Supp. 2d 1076, 1081 (S.D. Ind. 2003) ("Information conveyed to counsel by a client's agent remains privileged because the sharing of information between lawyers and clients is a two-way street.")

Although both attorney-client privilege and work product immunity may be waived, different waiver standards apply to these forms of protection in light of their distinct purposes. *BASF*, 224 F.R.D. at 442-43. Because attorney-client privilege is intended to protect the confidentiality of communications between a client and his attorney, the privilege may be waived whenever a privileged communication is voluntarily disclosed to a third party. *See id.* at 443. However, because the work product doctrine is meant to protect certain information created for litigation from an adversarial party, "disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." *Id.* at 441-443 (internal quotations omitted) (finding that disclosure of a letter to a client bound by a confidentiality agreement did not substantially increase the likelihood that a potential adversary would obtain the information). Whenever a party seeks to invoke either the attorney-client privilege or work product protection, that party "'bears the burden of establishing that the privilege applies.'" *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:14-cv-00006-RLM-SLC, 2017 WL 1361308 at *8 (N.D.

Ind. April 14, 2017) (quoting *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 523 (N.D. Ind. 2009)).

## B. DOCUMENT NO. 2: 9/22/14 EMAIL

This document is an e-mail from Joyce Alexander, Indiana University's former Executive Associate Dean in the School of Education, to her assistant. It forwards an e-mail from Anthony C. Warner, Executive Assistant in the Office of the Vice President and General Counsel, to Alexander, copied to two attorneys in the University's general counsel's office. Warner's e-mail forwards Dr. Haynes' open-records request regarding his application for tenure and promotion, identifies the in-house attorney who is responsible for responding (one of the copied attorneys), advises that the assigned attorney wants a telephonic conference with Alexander to discuss the matter, and suggests a time for the meeting.

These e-mails do not qualify for protection under either the attorney-client privilege or the work-product doctrine. The mere fact that an author of a communication is an attorney, that recipients (direct or copied) are attorneys, or that the communication addresses a subject that is or later became the subject of an attorney's legal advice, do not qualify a communication as privileged. These e-mails do not communicate legal advice from an attorney to a client or information from a client to an attorney for the purpose of obtaining legal advice. Their disclosure would not tend to reveal any confidential attorney-client communications. Likewise, the e-mails do not qualify as work product because there is no indication that they were generated in anticipation of litigation (as opposed to, for example, fulfilling the statutory duty to respond to a public-records request) or that they were developed in order to prepare for litigation. *See Harper v. Auto-*

*Owners Ins. Co.*, 138 F.R.D. 655 (S.D. Ind. 1991). These e-mails are transmittal vehicles and address non-privileged matters.

Defendants have not shown that these e-mails constitute attorney-client communications or work product and they do not otherwise appear to be. They are not privileged.

### C. DOCUMENT NO. 4: 11/6/2014 EMAIL

This document is a chain of seven e-mails. It starts with an e-mail from Brenton Martell, a University attorney, or "Legal Fellow," to Timothy Aaron Goth, Incident Response Manager/Lead Security Analyst for the Office of Public Safety & Institutional Assurance and the Office of the Vice President for Information Technology, and asks technical questions regarding tenure-process "eDossier notices" that Dr. Haynes had requested as part of his open-records request. The next three e-mails are follow-ups and clarifications. The fifth e-mail is from Goth to Maria Claudia Whitaker, whose position is not identified, asking her, in essence, to provide him with the answers to Martell's questions. The sixth e-mail is from Melanie A. Ebdon, Manager, HRMS (Human Resource Management System), to Susan L. McCammon, Assistant Vice Provost and Director of Academic Personnel Policies and Services, and Akash Shah, Director of Academic Systems Development, apparently forwarding the e-mail chain (there is no indication how Goth's e-mail to Whitaker made the leap to Ebdon) and asking what her office's involvement should be with Dr. Haynes' request. The final e-mail is from and to McCammon, (presumably, forwarding Ebdon's e-mail to another of her e-mail addresses) with brief text that is mostly cryptic.

Again, Defendants only describe the chain; they do not provide any argument showing how content in the chain satisfies the elements of either privilege. Without a showing, or even assertion, that the e-mail communicants reasonably anticipated litigation when they received Dr. Haynes' open-records request, that they generated the e-mails in order to prepare for that litigation, or that the e-mails would not have been generated but for the anticipated litigation, the Court cannot conclude that the e-mails constitute protectable work product. Therefore, it appears that the e-mails would have been generated regardless of any reasonably anticipated litigation in order to fulfill the University's statutory obligation to respond to the open-records request. In addition, the e-mails consist of technical questions about obtaining any notifications that were generated when material was added to Dr. Haynes' eDossier, in order to respond to the open-records request. There are no requests for or communications of legal advice.

In the absence of a developed legal and factual showing by Defendants, the Court cannot find that this document is protected under either the attorney-client privilege or the work-product doctrine.

## D.  DOCUMENT NO. 7: 1/30/15 EMAIL

This document is a chain of five e-mails beginning with one from Dr. Haynes to Shah, asking if the eDossier system during its pilot program in 2013 informed promotion and tenure candidates and reviewers when materials were added to the eDossier. Shah forwarded the e-mail to McCammon. The third e-mail is from McCammon to Thomas F. Gieryn, Vice Provost for Faculty and Academic Affairs, asking him if the general counsel wanted to handle Dr. Haynes' request, advising that she could not remember which attorney was working on it, and informing him of some details of eDossier notifications. It

concludes by telling Gieryn that she and Shah will wait to hear from him before replying. These first three e-mails already have been produced to Dr. Haynes; only the next two were withheld.  The fourth e-mail is from Gieryn to McCammon instructing her to send her inquiry to two attorneys in the general counsel's office and to let them "sort it out." The fifth e-mail is McCammon's response, copied to Shah, reading only "Thanks."

Defendants' sole argument for protecting the last two e-mails of the chain is:  "It includes an email from Mr. Gieryn directing Ms. McCammon to involve the University's legal counsel and, as a result, is protected by the attorney-client privilege and work product doctrine."  Dkt. 75 at 3.  Because Defendants' motion is publicly filed, the only information that this argument fails to reveal is the names of the two attorneys to whom Gieryn direct McCammon to direct her inquiry and the instruction to "let them sort it out." Defendants make no showing that the attorney's names and final instruction qualify as privileged information, in light of the content that already has been disclosed, and it is not apparent to the Court.

This document is not privileged.

### E.  DOCUMENT NO. 14: 2/28/2015 EMAIL

This document is a chain of three e-mails initiated by an e-mail from Thomas J. Huberty, Professor and Director, School of Psychology Program, Counseling and Educational Psychology, to Krista Glazewitz, Associate Professor, Instructional Systems Technology,[3] passing on a request for information from Indiana University's legal counsel

---

[3] Both individuals sat on Indiana University's School of Education's Promotion, Tenure, and Contracts Committee; and, in that capacity, reviewed and voted on Haynes' application.

relating to Dr. Haynes' application for tenure. The second e-mail is Glazewitz's response and the third is Huberty's reply.

Defendants' sole argument in favor of privilege is that counsel requested the information in order to prepare responses to Dr. Haynes' open-records request. Dkt. 75 at 4. The University has an independent statutory obligation to respond to open-records requests, regardless of whether litigation is reasonably anticipated or not. If counsel would have made his request, and these e-mails would have ensued, regardless of any anticipated litigation, then they would not qualify as work product. *See Harper*, 138 F.R.D. at 660-62; *Stout v. Ill. Farmers Inc. Co.*, 150 F.R.D. 594, 604-06 (S.D. Ind. 1993). Defendants have not shown that the e-mails constitute work product.

While content in Huberty's initiating e-mail could support a finding that the e-mails are attorney-client communications, it does not do so in isolation. The content itself fails to indicate that counsel's inquiry is related to Dr. Haynes' open-records request and, if it is related, there is no indication that counsel needs the information in order to provide legal advice or services, rather than fulfill an administrative function of complying with the statute. Defendants' thin argument simply requires the Court to make too many assumptions in order to find that this document is protected.

### F. CONCLUSION

Defendants' Motion for Leave to Submit Documents for *In Camera* Review (dkt. 75) is **GRANTED as to review of the documents**, but **DENIED as to protection of Defendants' documents nos. 2, 4, 7, and 14** because neither the attorney-client privilege nor the work-product doctrine apply to them. Defendants shall produce these documents within seven (7) days of the date of this Order.

# VI.  MOTION FOR PROTECTIVE ORDER

Defendants have also moved for a protective order to designate as confidential deposition testimony regarding the faculty members' votes on Dr. Haynes' tenure and their discussions that took place during deliberations.  Dkt. 78.  Defendants claim that the recently allowed depositions could result in the disclosure of such information.

Dr. Haynes argues that the information is not privileged and the order sought is overly broad and exceeds its purpose.  Dkt. 88.

Defendants have shown a recognized interest in protecting the confidentiality of academic tenure-review deliberations.  *See E.E.O.C. v. Univ. of Notre Dame du Lac*, 715 F.2d 331, 336 (7th Cir. 1983), disapproved on other grounds, *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990).  As the Seventh Circuit has stated, the peer review process "plays a most vital role in the proper and efficient functioning of our nation's colleges and universities….  Moreover, it is evident that confidentiality is absolutely essential to the proper functioning of the faculty tenure review process."  *Id.*

Defendants' Motion for Protective Order is hereby **GRANTED**, except the Defendants shall make the following modifications:  (a) Addition of specific tenure language to § II (new subsection D), limited to protection of tenure votes and deliberations by individual faculty members who served on the department-level tenure committee, as Defendants offered in their reply; and (b) Removal of language indicating that the order is an agreed or joint order (*e.g.*, order's title, § V.B).  The proposed language in §§ II.B. and C. shall remain.

Defendants shall file the modified protective order for the Court's signature within seven (7) days from the date of this Order.

# VII. <u>MOTION TO COMPEL</u>

Dr. Haynes has also filed a Motion to Compel pursuant to Rule 37(a). Dkt. 108. Dr. Haynes makes the following arguments in his motion: (1) Defendants' delay in producing a privilege log results in waiver of the privilege; (2) Defendants did not provide adequate information for Dr. Haynes to evaluate their claims of privilege; (3) Defendants did not submit all documents for *in camera* review as the parties agreed; and (4) Defendants' production of documents "create more questions than answers." Dkt. 108. The first three arguments are simply a rehashing of Dr. Haynes' arguments in the Motion for Sanctions and the Motion for *In Camera* Review, and have already been addressed. *See infra*, pts. II & V. With respect to the last argument, Dr. Haynes asserts four general complaints relating to the manner in which Defendants produced discovery in this matter: (a) Defendants did not provide native documents as required; (b) Defendants' discovery responses are deficient; (c) the purpose of Defendants' redactions on documents is "suspect;" and (d) Defendants did not properly organize the documents that they produced. Dkt. 108. As is the case with all of Dr. Haynes' motions, however, Dr. Haynes is unable to explain the untimely nature of his Motion to Compel. If these issues persisted throughout the litigation, the matter should have been addressed in a timely fashion first with the parties and then with the Court. *See* Rule 37(a)(1) (movant must first attempt to confer with the opposing party about discovery issues before seeking relief from the Court). Dr. Haynes' Motion to Compel attempts to circumvent his own failure to timely pursue these issues and lacks any rational explanation for this significant delay. Accordingly, Dr. Haynes' Motion to Compel is **DENIED**.

## VIII. <u>MOTION FOR RULE 56(d) RELIEF</u>

Dr. Haynes also seeks relief under Rule 56(d), which allows a district court to delay consideration of a summary judgment motion and order additional discovery if a party demonstrates "it cannot present facts essential to justify its opposition" to summary judgment.  *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627-28 (7th Cir. 2014).  The nonmoving party invoking the protection of Rule 56(d) must "state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery."  *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006).

In his request, Dr. Haynes merely cites to general "discovery deficiencies" but fails to specify why any of these alleged deficiencies preclude him from presenting essential facts to justify his opposition to Defendants' Motion for Summary Judgment.  Dkt. 110 at 12-13.  Moreover, Dr. Haynes' Motion for Rule 56(d) Relief mimics the arguments he made in his Motion to Compel and fails to advance any new legal theories that would entitle him to relief.  *Compare* dkt. 108 *with* dkt. 110.  Finally, Haynes does not present any "essential facts" gleaned from the six (6) witnesses that he deposed after summary judgment had been briefed.  Accordingly, for these reasons and those set forth in the Court's analysis on Dr. Haynes' Motion to Compel, *infra*, pt. VII, Dr. Haynes' Motion for Rule 56(d) Relief is **DENIED**.

## IX. <u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** the following: Dr. Haynes' Motion for Sanctions (dkt. 70), Dr. Haynes' Motion to Compel (dkt. 107), Dr. Haynes' Motion for Rule 56(d) Relief (dkt. 109), Defendants' Motion to Strike Response in Opposition to Motion (dkt. 84), and Defendants' Motion for Leave to File Surreply In Opposition to Plaintiff's Motion for Sanctions (dkt. 79). The Court **GRANTS in part and DENIES in part** the Defendants' Motion for Leave to Submit Documents for *In Camera* Review (dkt. 75), and **GRANTS** Defendants' Motion for Entry of Protective Order with modifications (dkt. 78). The Court finds that the documents submitted for *in camera* review are not privileged and therefore Defendants are **ORDERED** to produce the four (4) documents in question within seven (7) days of the date of this Order. Defendants shall also file a modified protective order for the Court's signature within seven (7) days of this Order.

IT IS SO ORDERED this 7th day of July, 2017.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution attached.

Distribution:

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Courtney E. Endwright
BETZ & BLEVINS
cendwright@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Melissa A. Gardner
TAFT STETTINIUS & HOLLISTER LLP
mgardner@taftlaw.com

Michael C. Terrell
TAFT STETTINIUS & HOLLISTER LLP
mterrell@taftlaw.com

Michele Lee Richey
TAFT STETTINIUS & HOLLISTER LLP
MRichey@taftlaw.com